UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SCOTT A.,

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 6:23-cv-06419-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on June 6, 2023, denied Plaintiff's application for supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 6), and the Commissioner has filed a similar motion (Doc. 9).  For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the defendant Commissioner.

### I.  BACKGROUND

    Plaintiff protectively applied for supplemental security income on June 27, 2020, alleging that he became disabled on that date.  After initial administrative denials of his claim, Plaintiff appeared at a hearing before an Administrative Law Judge on December 23, 2021.  Both Plaintiff and a vocational expert, Yaakov Taitz, testified at the hearing.

    The Administrative Law Judge issued an unfavorable decision on January 5, 2022.  He first found that Plaintiff had not engaged in substantial gainful activity since his application date.  Next, he concluded that Plaintiff suffered from severe impairments including a lumbar spine disorder, gastroparesis, obesity, an adjustment disorder, a depressive disorder, and an anxiety disorder.  However, the ALJ determined that Plaintiff's impairments, viewed singly or in combination, did not meet the criteria for disability as set forth in the Listing of Impairments

    Moving to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had the residual functional capacity to perform a limited range of light work.  He could not climb ladders, ropes, or scaffolds and could occasionally perform all other postural activities.  Additionally, Plaintiff had to avoid exposure to unprotected heights, hazardous machinery, extreme heat, poorly ventilated areas, and pulmonary irritants, and he was limited to simple, routine, repetitive tasks not performed at a production pace and involving only occasional contact with others.  Finally, he was limited to low-stress jobs involving only occasional

decision-making, changes in the work setting, and using job-related judgment.

The ALJ found that, with these limitations, Plaintiff could not do his past relevant work as a hospital cleaner, food service worker, and stock clerk. However, based on the testimony of the vocational expert, he determined that Plaintiff could do jobs such as routing clerk, price marker, and mail sorter. He also found that these jobs existed in significant numbers in the national economy. As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in his motion for judgment on the pleadings, raises this issue:

The ALJ's RFC fails to include limitations to time off-task or attendance.

Plaintiff's Memorandum, Doc. 6-1, at 6.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 53 years old at the time of the administrative hearing, first testified that he had an associate's degree in science and liberal arts. He said that he was not working due to both physical and emotional issues. On the physical side, he had back pain and breathing issues and could not stand for more than five minutes or walk for more than ten. He also became uncomfortable after sitting for ten minutes. His doctors have told him that his weight is a contributing factor to his discomfort. Plaintiff also said that he could hold a gallon of milk just long enough to set it on the counter. When asked about sleeping, Plaintiff testified that he suffered from insomnia and would nap during the day. He took medication for back pain including hydrocodone three or four times per week. He also had gastroparesis and needed frequent bathroom breaks.

Plaintiff also identified various emotional issues he experienced, including what he described as pervasive developmental disorder and being on the autism spectrum. He had anxiety in work situations and problems staying focused. He did take medication to manage anxiety. Finally, Plaintiff said that he lived in a bungalow home with his parents. On a typical day, he visited with his mother, watched television, and rested. Other than that, he did not engage in many activities.

The vocational expert, Dr. Taitz, after describing the vocational demands of Plaintiff's past work, was asked questions about a person of Plaintiff's age, education, and work experience who was limited to light work with a further restriction to occasional postural activities and no climbing of ladders, ropes, and scaffolds. The person also was unable to tolerate environmental pollutants, temperature extremes, or working around workplace hazards. Additionally, the person could do only simple, routine, repetitive tasks not at a production pace and with only occasional interaction with others, and with only occasional decision-making, changes in the

work setting, and the need to use judgment. He responded that such a person could not do any of Plaintiff's past jobs, but the person could work as a routing clerk, price, marker, and mail sorter. He also gave numbers for those jobs as they existed in the national economy. Finally, he testified that being off-task for more than 10% of the time would not be tolerated, nor would being absent from work more than one day per month.

### B. Treatment Records

The pertinent treatment records show the following. An episode note compiled in 2020 showed that Plaintiff's diagnoses included anxiety disorder, Asperger's disorder, GERD, and gastroparesis syndrome. He also had a history of colonic polyps. At an annual wellness exam conducted in April of 2021, Plaintiff did not report any recent mental health symptoms and had no medical complaints other than a rash on his legs and some constipation. Counseling notes from that time period show that he was generally alert and oriented but that he experienced periodic anxiety and frustration. He was counseled on making good choices and developing coping skills.

### C. Opinion Evidence

Plaintiff was seen on December 2, 2020, by Dr. Noia for a psychiatric evaluation. He told Dr. Noia that he had stopped working due to medical problems. He described a history of mental health counseling beginning in 2007 and was currently seeing a counselor every two weeks. Plaintiff said he had symptoms of depression and anxiety and also that he was diagnosed at age 5 as being on the autism spectrum. On examination, Plaintiff had a neutral affect and mood, and he made appropriate eye contact and had coherent thought processes. Dr. Noia did not observe any issues with attention, concentration, or memory. He concluded that Plaintiff had no problems dealing with instructions or making work-related decisions. He did have a mild limitation relating to others and in the areas of regulating emotions, controlling behavior, and maintaining well being, but there were no limitations in sustaining concentration or pace or in attending work on a regular basis. (Tr. 411-14).

Plaintiff's counselor, George Funnell, completed a questionnaire on November 10, 2021, indicating that Plaintiff had moderate to marked limitations in his ability to maintain attention and concentration, maintain regular work attendance, perform within a schedule, interact with the public, accept instructions and respond appropriately to supervisors, and get along with coworkers. He also said that Plaintiff would be off task more than 33% of the day and would miss three or more or days of work per month, attributing all of these issues to adjustment disorder with anxiety and depression. (Tr. 554-56). The following month, Dr. Brammer, also a treating source, filled out a questionnaire stating that Plaintiff had marked or extreme impairments in all work-related areas and that his rates of being off-task and missing work were the same as noted by Mr. Funnell. He explained that Plaintiff suffered from Asperger's syndrome with obsessive-compulsive disorder and anxiety exacerbated by social interactions, and also that he was tangential and had difficulty staying on track and following through with instructions. (Tr. 558-60). Dr. Brammer also concluded that Plaintiff had physical limitations

including the urgent need to urinate with little advance warning, fatigue caused by his medications, chronic back pain, and impaired social adaptability.  He would need to alternate positions every 20 minutes, could stand for only two hours in a day, could not lift more than ten pounds, and required unlimited access to a bathroom.  (Tr. 564-66).

State agency reviewers also expressed opinions about Plaintiff's functional capacity.  Dr. Kamin, a psychologist, thought that Plaintiff could do unskilled work in a low contact setting.  (Tr. 117).  He believed Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods, to work in proximity to others, to complete a normal workday and work week without interruption from psychologically-based symptoms, to interact with the general public, and to respond appropriately to changes in the work setting.  (Tr. 118-22).  Dr. Haus, another state agency reviewer, generally concurred with those opinions.  (Tr. 137-41).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

### IV.  DISCUSSION

Plaintiff, in support of his claim of error, argues generally that the ALJ failed to account

for limitations in Plaintiff's ability to stay on task to attend work on a regular basis.  He contends that the ALJ did not properly assess the opinion of counselor Funnell, citing only irrelevant factors in reaching the conclusion that it was not persuasive, and that the ALJ also erred when assessing Dr. Brammer's opinion because he did not address the consistency factor.  Plaintiff also takes issue with the ALJ's reliance on the opinions of the consultative and reviewing medical sources.  In response, the Commissioner argues that ALJ had a reasonable basis for weighing the various opinions as he did and finding that Plaintiff was capable of sustaining regular work activity.

Because Plaintiff's claims focus, for the most part, on how the ALJ evaluated the various expert opinions, the Court will set out his rationale for that evaluation in some detail.  The ALJ stated explicitly that his mental residual functional capacity finding was based on the opinions of Drs. Noia, Kamin, and Haus, all of which he found to be persuasive. (Tr. 20).  With respect to the two state agency reviewers, the ALJ found that

> [t]heir opinions are consistent with records that describe a normal affect and no apparent depression, anxiety or agitation (Exhibit C7F, p.5). Their opinions are consistent with the claimant's lack of inpatient mental health treatment. Their opinions are generally consistent with the opinion of psychologist Noia. The psychological consultants reviewed the record, and they have program and professional expertise.

(Tr. 20-21).  Turning to Dr. Noia's opinion, the ALJ noted that it

> was based on an examination of the claimant that found a cooperative attitude, adequate social skills, appropriate eye contact, normal motor behavior, a neutral affect, coherent and goal directed thought processes, intact memory, intact attention and concentration, good insight and good judgment (Exhibit C4F). This opinion is consistent with other recent records wherein the claimant denied having any symptoms (Exhibit C7F, p.2). It is also consistent with records that describe no depression or anxiety (Exhibit C7F, p.5).  Psychologist Noia examined the claimant, and he has professional expertise.

(Tr. 21).  Then, after determining that Plaintiff's self-report of disabling symptoms was not entirely consistent with the record, the ALJ reviewed Mr. Funnell's opinion and found that it was

> contrary to his own treatment notes and clinical findings. For example, social worker Funnell has found the claimant to be alert and oriented with normal speech, cooperative behavior, a congruent mood/affect and no suicidal ideation. While he has noted anxiety at times, he has also noted the claimant's ability to use coping skills, and he has found good progress in therapy (Exhibit C12F). Furthermore, this opinion is not consistent with other records that describe no depression or anxiety. Since this opinion is not consistent with the record, I find it is less persuasive.

(Tr. 22). Similarly, the ALJ discounted Dr. Brammer's views, reasoning that it was

> contrary to the claimant's work history, as he worked many years at the substantial gainful activity level, and there is no evidence of worsening. This is contrary to the claimant's own reporting, where he essentially noted no problems (Exhibit C11F, p.2). It is contrary to the findings from the consultative examination. It is contrary to recent records that note no issues with depression or anxiety. Since this opinion is not consistent with the record, I find it is not persuasive.

*Id*.

Based on the date on which Plaintiff's application was filed, the 2017 version of the regulations governing an ALJ's analysis of medical opinion evidence applies. See 20 C.F.R. § 404.1520c. That regulation identifies five factors to be considered: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. As this Court has said,

> [s]upportability and consistency are the most important of the five regulatory factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Accordingly, the ALJ "will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." Id. §§ 404.1520c(b)(2), 416.920c(b)(2) (emphasis added). The ALJ may, but is not required to, explain how he considered the remaining three factors. *Id*. An ALJ's failure to explain the supportability and consistency of the medical opinions or prior administrative medical findings in the record is procedural error. *Loucks v. Kijakazi,* No. 21-1749, 2022 WL 2189293, at \*2 (2d Cir. June 17, 2022) (summary order). However, if a searching review of the record assures the court that "the substance of the regulation was not traversed," a court may affirm the Commissioner's decision despite the error. *Id*. (*quoting Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)) (alterations omitted).

*Brianne S. v. Comm'r of Soc. Sec.*, 2023 WL 6225249, at \*4 (W.D.N.Y. Sept. 26, 2023).

Given this legal standard, the Court finds no error in the way in which the ALJ analyzed the five expert opinions in this case. The ALJ clearly determined that both Mr. Funnell and Dr. Brammer expressed opinions that were not only inconsistent with the other three opinions of record, but which were also unsupported by and inconsistent with the treatment notes made in the numerous counseling sessions which Mr. Funnell conducted. The Commissioner correctly notes that Plaintiff consistently presented with normal findings and denied having issues in multiple mental functional areas. Contrary to Plaintiff's argument, the treatment notes and their recorded findings are relevant to the state of Plaintiff's mental functioning, and the ALJ properly relied on them in determining that the opinions of Mr. Funnell and Dr. Brammer were less than

persuasive.

To the extent that Plaintiff also argues that the findings made by the state agency reviewers about moderate restrictions in various areas of mental functioning were either inconsistent with the ability to perform unskilled work with limitations in pace, routine, and contact with others or not taken into account by the ALJ, the record shows otherwise.  The ALJ imposed a number of mental functional restrictions in addition to limiting Plaintiff to simple, routine, repetitive tasks, and the Commissioner correctly notes that such restrictions are consistent with the ability to perform unskilled work.  *See, e.g., Melissa M. v. Comm'r of Soc. Sec.*, 2022 WL 593452, *6 (W.D.N.Y. Feb. 28, 2022); *see also Rae L. v. Comm'r of Soc. Sec.,* 2025 WL 2611384*, *5 (W.D.N.Y. Sept. 10, 2025).  Under these circumstances, the Court must affirm the Commissioner's decision.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 6), **GRANTS** the Commissioner's motion (Doc. 9), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

/s/ Terence P.  Kemp
**United States Magistrate Judge**